UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| JENNIFER A. CALVERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 16-cv-205-JMH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. ) | |
| ) | |

\*\*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 10, 12) on Plaintiff's appeal of the Commissioner's denial of an application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

Plaintiff protectively filed an application for disability insurance benefits (DIB) in July 2013, alleging disability beginning June 19, 2012 (Tr. 58, 137). Her application was denied initially and on reconsideration (Tr. 83-89), and she pursued and exhausted her administrative remedies before the Commissioner (Tr. 1-3, 6-57). This case is ripe for review pursuant to 42 U.S.C. § 405(g).

---
[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

**II.**

Plaintiff, who was age 38 at the time of her alleged disability onset date and within days of turning forty three years old at the administrative hearing, has a high school education and past relevant work as a human resources assistant, dispatcher, and receptionist (Tr. 36, 47-48, 161). She alleged disability due to several impairments, including degenerative disc disease (Tr. 151). She had a prior history of lower back surgery, including an L3-L5 decompression and fusion for multiple disc herniation (Tr. 221). In 2012, she experienced sharp, stabbing, constant pain running from her low back into the posterolatereal aspect of her left leg and into her left foot as well as paresthesis in her left great toe and thigh and spasms in her left hip and thigh, fatigue, difficulty sleeping, bowel problems, sexual problems, muscle pain, muscle cramps or spasms, low back pain, trouble walking, weakness or numbness, tingling, and depression, as well as reporting that her hip had given out and she had fallen, experiencing issues getting up from a sitting or lying position, and challenges climbing or descending stairs, with symptoms worse when she sat (Tr. 258-59). With the return of symptoms that were not adequately responding to more conservative treatment, she underwent an additional lower back procedure for a herniated disc on June 19, 2012—her alleged disability onset date (Tr. 231-32, 253, 255).

At a follow up appointment with her surgeon, Ryan Cassidy, M.D., approximately six weeks after her surgery, Plaintiff reported that she had experienced a "complete resolution of her symptoms shortly after surgery," but was now beginning to feel increased pain in her lower extremities, although not as bad as prior to surgery (Tr. 231). Dr. Cassidy examined her and observed tenderness to palpation over her left trochanter, downgoing Babinksi bilaterally, and the absence of Hoffman signs and clonus bilaterally (Tr. 244-46). She had normal objective findings on examination, lower back x-rays showed no hardware complications, and the doctor stated that the return of some symptoms at six-to-eight weeks post-op was not uncommon, and likely due to ongoing scar tissue (Tr. 238, 247-48). He prescribed a muscle relaxant and an anti-inflammatory and encouraged Plaintiff to increase her activities as tolerated (Tr. 248). She was seen again in October 2012 for a three-month follow up, at which time objective clinical findings were again unremarkable other than lower back tenderness (Tr. 244-45). Plaintiff reported some hip and leg pain, but declined to schedule a follow up appointment because she was doing well, felt like she continued to improve, and just wanted to be seen on an as-needed basis (Tr. 245).

Plaintiff did not see Dr. Cassidy again until July 2013 (Tr. 282-83). At that visit, she reported that she had been

3

doing well until the prior month, when she began experiencing some lower extremity pain and numbness (Tr. 282-83). On examination, her lower back was non-tender to palpation, she had no neurological deficits, and a straight leg raise test—a method of detecting an underlying herniated disk or compressed nerve root—was negative (Tr. 282-83). Lower back x-rays showed no hardware complications (Tr. 275, 282-83). Plaintiff, who had been treating symptoms with Aleve, was prescribed new medications and referred to physical therapy for a core-strengthening program (Tr. 282-83).

The following month, a consulting physician, David Gilbert, M.D., examined Plaintiff as part of the administrative proceedings (Tr. 266-71). Plaintiff reported significant everyday pain, only helped by rest and frequent change of position, and the use of a cane or walker when her back pain was worse (Tr. 266-67). Dr. Gilbert observed that Plaintiff used her upper extremities for leverage when she went from a sitting to standing position and found that Plaintiff had some tenderness to palpation, but otherwise had a normal gait, full strength in her extremities, and no neurological deficits (Tr. 267-68). He opined that Plaintiff was unable to walk more than 50 to 100 feet on a flat surface without discomfort, but could sit for 30 minutes at a time, although she would need to frequently shift positions (Tr. 268-69).

In October 2013, Plaintiff had a follow up appointment with Dr. Cassidy (Tr. 279-80). She reported that she was still having some pain in her back, hips, and legs, but was doing better than before surgery (Tr. 279). Physical examination findings were again unremarkable, and Dr. Cassidy did not think she would benefit from any further surgery; he thought her symptoms would continue to improve with time (Tr. 279).

In January 2014, state agency physician Rebecca Luking, D.O., reviewed the record and opined that Plaintiff had abilities consistent with a range of light work (Tr. 74-76).

Thereafter, in August 2014, Plaintiff reported to her primary care physician, Becky McGilligan, M.D., that another doctor, Dr. Justin Kreuer, had performed a nerve block for back pain, but it did not help (Tr. 309). Dr. McGilligan made an orthopedic spine referral (Tr. 311), and Plaintiff saw Michael Rohmiller, M.D., the following month (Tr. 384-85). On examination, Dr. Rohmiller found that she had downgoing toes with Babinksi, no ankle clonus bilaterally, no muscle atrophy, 5/5 strength in the right hip, flexor, quadriceps, and anterior tibialis, and 4/5 strength on the left (Tr. 385). She had some lower back tenderness and a positive straight leg raise test on the left, negative on the right (Tr. 385). Dr. Rohmiller ordered a lower back CT scan, and Plaintiff had a follow up appointment that same month (Tr. 383, 386). The CT scan showed no evidence

of hardware failure, and Dr. Rohmiller also reviewed and agreed with an April 2014 MRI report, which noted a small central disc bulge at one level and a small foraminal protrusion at another level (Tr. 383, 385). He found that Plaintiff was "doing well" on Flexeril (a muscle relaxant) and Ultram (tramadol, a pain reliever), and encouraged her to avoid further surgery (Tr. 383). Plaintiff saw Dr. Rohmiller again in late October 2014, stating that she was not getting much relief from her medications (Tr. 391). The doctor recommended trying facet blockers and radiofrequency ablation (Tr. 391).

On October 31, 2014, Dr. McGilligan completed a medical source statement in which she opined that, due to Plaintiff's degenerative disc disease, Plaintiff could only stand for 15 minutes at a time, sit for 15 minutes at a time, could not even lift five pounds occasionally, and could never bend, stoop, balance, or climb ladders or stairs (Tr. 388-89). Dr. McGilligan further opined that Plaintiff would need to take unscheduled breaks every 15 minutes and would miss more than four days a month of work on average (Tr. 388-89).

The record contains three additional treatment records from Dr. McGilligan after that date. Plaintiff saw her twice in January 2015 for issues unrelated to her back pain, although her Flexeril prescription was refilled at the latter visit (Tr. 400-09). Then, in a June 2015 treatment note—the last in the record—

6

Dr. McGilligan indicated that Plaintiff's pain was "controlled" with tramadol (Tr. 395). Dr. McGilligan further stated that Plaintiff was "fully functional" in all activities of daily living while on the medication and experienced "minimal" side effects (Tr. 395). Plaintiff was going to the gym four time a week and trying to lose weight, and she and her doctor discussed getting regular exercise, including weightlifting (Tr. 395, 397).

At her September 2015 administrative hearing, Plaintiff testified that her symptoms had actually gotten worse since her last back surgery, that her inability to sit still due to pain prevented her from working in a sedentary capacity, and that she had difficulty thinking straight due to the pain and pain medication (Tr. 37). She testified that she had returned to work in a receptionist/customer care position after the alleged onset day but that her employment was terminated for poor attendance (Tr. 35). She described how she would work a day and, then, that night would be in pain and unable to go to work the next day, such that she was missing two to three days of work a week (Tr. 35-36). She testified that, because of weakness in her hips, legs, feet, and arms, she had fallen in the shower, is unable to cook if she has to stand at the stove but can microwave things quickly, cannot go up and down the stairs to do laundry or carry the laundry, can sit on the sofa

7

and help fold laundry, cannot vacuum or load or unload the dishwasher, cannot push a cart or remain very long at the grocery, can float in a pool but not participate in other pool activities, cannot sleep for more than two hours at a time and no more than three to three and a half hours every night, and cannot find any position in which she is comfortable (Tr. 40-43). She testified that she uses a walker (Tr. 43) and uses Tramadol, Flexeril, and over-the-counter medication such as Aleve to help with chronic pain (Tr. 43-45).

The ALJ found that Plaintiff's lumbar spine degenerative disc disease with radiculopathy was a severe impairment and assessed a residual functional capacity (RFC) for a range of sedentary work (Tr. 11, 13). More specifically, the ALJ found Plaintiff could occasionally push/pull using foot controls bilaterally; alternate between sitting and standing at will, provided she is not off task for more than 10% of the workday; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally stoop, crouch, kneel, and crawl; never be exposed to work involving extreme cold, exposure to vibration, workplace hazards, or operation of commercial motorized vehicles (Tr. 13). The ALJ considered the testimony of a vocational expert to find that, with this RFC, Plaintiff remained capable of performing past relevant work or, in the alternative, could perform other work existing in significant

8

numbers in the national economy (Tr. 19-21). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act (Act) (Tr. 21).

### III.

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)).

## IV.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "'means such relevant evidence as a reasonable mind might accept.'" *Foster*, 279 F.3d at 353 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1991)).

## V.

Ultimately, Plaintiff argues that the ALJ's opinion is in error because his ultimate RFC finding does not directly correspond to the limitations identified in the opinions of Drs. McGilligan, Gilbert, and Luking. *See* Pl.'s Br. 11 ("ALJ Gollin did not appear to rely on any of the medical sources."), *id.* at 17 ("[T]he ALJ disregarded their opinions to a degree that would justify his own non-disabling RFC.")). That, alone, is not enough to undermine the ALJ's assessment. *See* 20 C.F.R. §

404.1546(c) (stating an ALJ is responsible for assessing RFC); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (unpublished) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439-41 (6th Cir. 2010) (unpublished) (affirming where the ALJ's RFC finding did not fully adopt any of the medical opinions of record). Rather, the Court considers whether substantial evidence supports the ALJ's assessment of these opinions, giving gave "limited weight" to Dr. McGilligan's opinion, "partial weight" to Dr. Gilbert's opinion, and "some weight" to Dr. Luking's opinion (Tr. 18-19)

First, the ALJ provided valid reasons supported by evidence for discounting Dr. McGilligan's opinion of Plaintiff's ability to do work, even while recognizing her as a treating source. He declined to give her opinion controlling weight because observed that Dr. McGilligan provided little support for the extreme limitations included in her opinion, which appeared to conflict with the medical record, including her own treatment notes (Tr. 19). *See* 20 C.F.R. § 404.1527(c)(2)-(4) (ALJ must give "good reasons" for weight given supportability and consistency with the record as a whole are factors an ALJ must consider); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir.2006) (en

11

banc); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (ALJ may discount a treating physician's opinion if the ALJ provides good reasons supported by substantial evidence); Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (stating that ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

As the Commissioner points out, while the ALJ noted that Dr. McGilligan prescribed narcotics to Plaintiff for pain relief, Plaintiff had primarily seen Dr. McGilligan for acute medical issues such as abdominal pain or ear pain (Tr. 15; *see* Tr. 309, 313, 319, 323, 405). The ALJ also cited a September 2013 treatment note in which Dr. McGilligan found Plaintiff had normal range of motion and no significant neurological deficits, and a June 2015 treatment note in which she stated that tramadol was helping with Plaintiff's symptoms, allowing her full functionality in all activities of daily living, which included going to the gym four times a week (Tr. 15, 19; *see* Tr. 325, 395-99). The ALJ reasonably found this record inconsistent with Dr. McGilligan's opinion, which indicated that Plaintiff could only stand or sit for 15 minutes at a time, could not lift five pounds even occasionally, and would need to take unscheduled breaks every 15 minutes (Tr. 388-89).

Nor does the Court find merit to Plaintiff's criticisms of the ALJ's opinion of the "conservative" treatment that she received, which the ALJ viewed as at odds with the extreme limitations which Dr. McGilligan proposed. (Tr. 388-39, 395, 397.) With respect to Dr. McGilligan [*see* Pl.'s Br. 13-14], the Court agrees with the Commissioner that it was both accurate and reasonable for the ALJ to observe that a June 2015 treatment note indicated that "conservative pain management [i.e., prescription medication] was allowing her to complete her daily activities with no significant difficulty" (Tr. 19; *see* Tr. 395), *see* 20 C.F.R. § 404.1527(c)(2)(ii) ("We will look at the treatment the source has provided . . . ."), as well to recognize their discussions of her four visits to the gym every week and the potential for weightlifting. While Dr. McGilligan referred Plaintiff to an orthopedic surgeon, which the ALJ acknowledged (Tr. 15), the specialist did not opine that her back impairment precluded work. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Plaintiff's efforts to minimize Dr. McGilligan's own words—that Plaintiff was "fully functional in all ADLs while on the medication" (Tr. 19, 395)—are not persuasive. Dr. McGilligan

said what she said, and the ALJ did not err when he weighed that as he did in his analysis. *See Ulman*, 693 F.3d at 713.

Similarly, substantial evidence supports the ALJ's decision to give only "some weight" to Dr. Luking's opinion that Plaintiff had abilities consistent with a range of light work, he observed that the opinion was generally consistent with the overall record and included reference to specific records documenting "relatively benign medical findings, including intact gait, intact strength, and no substantial neurological deficits" (Tr. 18; *see* Tr. 74-76, 279-80, 282-83). *See* 20 C.F.R. § 404.1527(e)(2)(i) (stating that reviewing state agency consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 294 (6th Cir. 2006) (unpublished) (finding that the opinions of the state agency medical consultants provided substantial evidence for the ALJ's RFC assessment). In fact, the ALJ reasonably tempered the opinion in Plaintiff's favor, finding the overall evidence more consistent with a range of sedentary rather than light work given Plaintiff's surgical history (Tr. 18).

The ALJ also provided adequately detailed and valid rationales for the partial weight given to the opinion of examining physician, Dr. Gilbert (Tr. 19). *See Stacey v. Comm'r*

14

*of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (unpublished) ("[T]he ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" (quoting *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir.1995)). Notably, the ALJ observed based on the record that Dr. Gilbert's conclusions, such as Plaintiff's inability to walk more than 50 to 100 feet at a time, and the potential need for an assistive device, appeared to conflict with Dr. Gilbert's own objective examination findings, which were generally unremarkable (Tr. 19; *see* Tr. 266-71). *See* 20 C.F.R. § 404.1527(c)(3)-(4). The substantial evidence supports the ALJ's conclusion that these restrictions and needs were based more on Plaintiff's self-reporting than from the Dr. Gilbert's actual examination findings (Tr. 19; *see* Tr. 266-67). *See Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (unpublished) ("[T]he ALJ is not required to simply accept the testimony of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004).

Ultimately, the Court concludes that the ALJ's analysis of the opinion evidence of these physicians and, by extension, the ALJ's ultimate RFC assessment were well reasoned and supported

by substantial evidence. The decision will be affirmed in this regard.

**V.**

Finally, the Court concludes that the ALJ's assessment of Plaintiff's subjective complaints, which discounted them, is supported by substantial evidence. Pointedly, the ALJ articulated several reasons for discounting her subjective complaints in his analysis which were consistent with the regulatory factors. (Tr. 14-18;) SSR 96-7p, 1996 WL 374186, at *2 (stating an ALJ must give "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight"), *superseded by* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016).

The Commissioner has summed up the ALJ's analysis succinctly:

> The ALJ recognized Plaintiff had undergone several surgical procedures on her back and frequently reported pain to medical providers, but he also noted that on physical examination, Plaintiff failed to "demonstrate[] signs typically associated with chronic, severe pain such as muscle atrophy, spasm, rigidity, or tremor" (Tr. 17). *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other

16

symptoms will not alone establish that you are disabled."). Rather, outside of muscle tenderness and inconsistent reports of left lower extremity weakness, objective medical findings were relatively benign and "further tempered by recent reports made by the claimant to her primary provider of essentially intact daily functioning" (Tr. 17). As explained by the ALJ, that June 2015 treatment note from Dr. McGilligan—the only record from 2015 where the primary purpose of the visit was Plaintiff's back pain—was hard to square with Plaintiff's hearing testimony, just three months later, "which essentially described debilitating pain with little to no improvement with treatment (Tr. 16-18).

The Court declines to reweigh the evidence as Plaintiff requests and defers to the ALJ's credibility determination which is inherent in this analysis. *See Ulman*, 693 F.3d at 713; 20 C.F.R. § 404.1529(a), (d) (ALJ should consider whether symptoms are consistent with the objective medical evidence and whether there are conflicts between claimant's statements and the rest of the evidence); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight."). The decision will be affirmed in this regard.

Accordingly, **IT IS ORDERED**:

(1) That the Commissioner's Motion for Summary Judgment [DE 12] is **GRANTED**;

(2) That Plaintiff's Motion for Summary Judgment [DE 10] is **DENIED**.

This the 6th day of April, 2018.



Signed By:
*Joseph M. Hood* JMH
Senior U.S. District Judge